# United States District Court for the District of Columbia

KAREN CREAMER, JANE DALEN,
MARY MOODY, MARY PIZZI,
AND ESTHER SHAPIRO,

       Plaintiffs,

vs.

DISTRICT OF COLUMBIA,

MAYOR MURIEL BOWSER, in her
individual capacity,

DC HEALTH,

DR. LaQUANDRA S. NESBITT, DIRECTOR
OF DEPARTMENT OF HEALTH, in her
individual capacity, and

JOHN DOES 1-20,

       Defendants.

_____ /

Case No. _____
District Judge _____

A TRIAL BY JURY IS DEMANDED
ON ALL COUNTS

## **VERIFIED COMPLAINT**

Timothy P. Bosson, Esq. (DCB: 1029002)
Isaiah R. Kalinowski, Esq. (DCB 1021011)[*]
Robert Rose, Esq. (DCB: 1029004)
Bosson Legal Group, PC
8300 Arlington Blvd., Ste. B2
Fairfax, Virginia 22031
tbosson@bossonlaw.com
ikalinowski@bossonlaw.com
rrose@bossonlaw.com
Phone (571) 775-2529
Fax (571) 775-2521
*Counsel for Plaintiffs*

---

[*] Seeking admission to D.D.C.

## VERIFIED COMPLAINT

COME NOW KAREN CREAMER, JANE DALEN, MARY MOODY, MARY PIZZI, AND ESTHER SHAPIRO, Plaintiffs, by and through undersigned counsel, and, averring that Defendants acted impermissibly in denying Plaintiffs professional licensure on the basis of their free exercise of religion in derogation of law, state as follows in support of their complaint and related request for injunctive relief:

### JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331, 1332, and 1343. This complaint addresses federal questions, the Plaintiffs are all diverse in citizenship from the Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

2. Claims are asserted and relief is requested pursuant to 42 U.S.C. §1983, 42 U.S.C. § 2000bb-1(c), 28 U.S.C. §§2201-2202, and 28 U.S.C. § 1651, as Plaintiffs allege an ongoing violation of their rights granted by the Constitution and the Religious Freedoms Restoration Act.

3. Additionally, this court has jurisdiction pursuant to 28 U.S.C. § 1346 since this civil action is leveled against the federal District of Columbia, a political subdivision of the United States.

4. Supplemental claims are asserted pursuant to 28 U.S.C. §1367, and (if prevailing) attorney fees and costs will be sought pursuant to 42 U.S.C. §1988(b) and 28 U.S.C. § 2412.

5. This court has both general and specific jurisdiction over all Defendants.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b). All Defendants perform their official duties in this district.  The licensure improperly denied was for licensure in

this district.  All of the actions of the Defendants that are the subject of this Complaint occurred

in this district.  Venue also properly lies in this court pursuant to 28 U.S.C. § 1391(e).

PARTIES

7.      Plaintiffs are five telephonic advice nurses, none of whom see patients in person,

and none of whom reside within the physical jurisdiction of the District of Columbia, who each

sought religious exemption from the Covid-19 vaccination mandate imposed by Defendants.

8.      All five Plaintiffs have been denied the renewal of their nursing license by the

Defendants, and their current license expires on 30 June 2022.  Without that license, Plaintiffs

will lose their position of employment as a consequence of discrimination against their religious

beliefs and practice, and will suffer irreparable harm.

9.      Plaintiff Karen Creamer is a natural person living and working in Wells, Maine.

She is an avowed Christian who strongly believes it is wrong to destroy innocent human life for

the purposes of testing, development, or manufacture of medical products, which describe all

available Covid-19 vaccinations which used fetal cell lines in one or more of those applications.

As a result, receiving those substances would be morally wrong for her because of the morally

repugnant processes employed.

10.     Plaintiff Jane Dalen is a natural person living and working in Phoenix, Arizona

with deeply and sincerely-held religious objections to the Covid-19 vaccinations.

11.     Plaintiff Mary Moody is a natural person living and working in Llano, Texas.

Like others, her moral objection of conscience lies primarily in the use of fetal cell lines in the

development, testing, and manufacture of these vaccines.  To her, a baptized Catholic, receiving

one of these vaccinations or otherwise endorsing their use would amount to an endorsement of

the human sacrifice of the dead children whose cells were used and multiplied for the production

3

of this vaccination.  By her beliefs, receiving the Covid-19 vaccination would be a defilement of her body and her conscience.

12.     Plaintiff Mary Pizzi is a natural person living and working in Phoenix, Arizona with deeply and sincerely-held religious objections to the Covid-19 vaccinations.

13.     Plaintiff Esther Shapiro is a natural person living and working in Grand Junction, Colorado.  Plaintiff Shapiro is a deeply religious Christian, who holds sacred and genuine beliefs that forbid her from accepting any vaccinations.  She has a firm, sincere faith and conviction in the way God has created her body and blessed her with a powerful, perfectly working immune system that is designed to combat foreign antigens, including viruses.  She considers herself whole just the way that God created her, and she refuses outside support to do what her holy temple was designed to do.  Importantly, she specifically chose a job that she can perform from home to avoid a situation like this one: She practices her nursing and her religion from home, and does not interact directly with others in those capacities.

14.     All five Plaintiffs work as telephonic remote health advice nurses for Health Dialog, part of the Rite Aid family of healthcare companies, in which capacity they provide personalized population health services to health plans, providers, employers and pharmaceutical manufacturers.  In order to remain employed full-time in that capacity, the Plaintiffs must maintain their nursing license in every jurisdiction in the United States, including the District of Columbia.

15.     All five Plaintiffs have previously maintained their nursing license with the District of Columbia, and recently applied for renewal, given that their current licensure term ends on 30 June 2022.  All five Plaintiffs have taken appropriate action to renew their license in

advance of that date, including continuing education and payment of the stated fee, but have not been permitted to renew their license as usual.

16.     All five Plaintiffs are, and at all relevant times herein have been, devout, observant Christians who seek to follow the teachings of the Bible.  Each of the Plaintiffs feel morally bound and guided by the teachings of their specific Christian beliefs that make up the core of their personal identity and support structure.  Each of the Plaintiffs have expressed that she sincerely believes that her sincerely held religious beliefs, informed by Scripture and her own conscience as the temple of the Holy Spirit, morally preclude her from willfully receiving any of the Covid-19 vaccines into her body.

17.     Defendant District of Columbia is and was at all times relevant hereto a municipal corporation, and was and is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees.

18.     Defendant Muriel Bowser is and was at all times relevant hereto the duly-elected Mayor of the District of Columbia, and as such was responsible for the promulgation and implementation of the policies, procedures, and practices of all "subordinate agencies" within the District of Columbia, including the licensing authority at issue herein. She is named as a defendant in this action in her individual capacity.

19.     Defendant DC Health is a subordinate agency which has been delegated the authority to administer licensing for nurses for the District of Columbia, and was and is responsible for the policies, procedures, and practices implemented through its various divisions, departments, agents, and employees.

20.     Defendant LaQuandra S. Nesbitt is and was at all times relevant hereto the duly appointed Director of Health for the District of Columbia, and as such was responsible for the

promulgation and implementation of the policies, procedures, and practices of the District of

Columbia Department of Health. She is a named defendant in this action in her individual

capacity as the Director of Health.

21.     Defendants John Doe 1 – 20 are other individuals whose identities are unknown

to Plaintiff at this time and who may be responsible for the conduct alleged in this Complaint.

22.     During all relevant times alleged herein, Defendants have acted and continue to

act under the color of the District of Columbia laws, regulations, and policies.

23.     Defendants are responsible for designing, adopting, approving, authorizing,

implementing, and enforcing the licensing policies, practices, customs, and procedures of the DC

Department of Health.

<u>D.C. CODE, REGULATORY SCHEME, AND ADMINISTRATIVE POLICY ADVERSELY
AFFECTING PLAINTIFFS</u>

24.     Pursuant to rulemaking authority, on 10 November 2021, Director Nesbitt

adopted new rules that conditioned professional licensure on proof of vaccination with Covid-19

vaccines, which rules became final upon publication in the District of Columbia Municipal

Regulations (DCMR) on 10 December 2021.  **Complaint Exhibit 1 at 1-17**.

25.     The first set of these rules, entitled "Mandatory Covid-19 Vaccination for Health

Care Workers," applied by its terms to all professions regulated by DC Health, including

nursing.  22B DCMR § 230 *et seq.*

26.     Included among those rules were provision for two grounds for exemption from

the vaccination requirement, one for medical excuse and one for religious exemption.  22B

DCMR § 231.1.

27.     The rule for the determination of exemption states that, "A person who is

otherwise required to be vaccinated against COVID-19 pursuant to § 230 shall be exempt from

the COVID-19 vaccination requirement if the person files a request for an exemption with the Director in accordance with § 231.3."

28.     For those like the five Plaintiffs in this case who seek religious exemption, the standard for being approved for an exemption is simple: "The person objects in good faith and in writing that the person's vaccination against COVID-19 would violate a sincerely held religious belief and the vaccination would in fact violate a sincerely held religious belief of the person." 22B DCMR § 231.1(a).

29.     There are no further factors indicated for consideration in the assessment of a religious exemption, and no reference made to the countervailing burden that might be imposed on any of the Defendants by an individual's application for an exemption.

30.     By a plain reading of the regulation, so long as an applicant for exemption provides sufficient documentation to demonstrate that the exemption is warranted on that basis, the exemption should be granted.  22B DCMR § 231.3.  However, the exemption is only effective once the Director provides the successful applicant with a written document to that effect.  22B DCMR § 231.4.

31.     The second set of rules that were adopted by Director Nesbitt, entitled "SARS-CoV-2/Covid-19-related Obligations of Health Professionals," applies to any person or entity licensed, registered, or certified by DC Health (such as Plaintiffs' employer).  17 DCMR § 4019.1.

32.     Importantly, those rules prohibit entities like Plaintiffs' employer from "employ[ing] or contract[ing] with any person … who is required to be vaccinated … pursuant to § 230 … and who is not so vaccinated, unless the person has been granted an exemption from the vaccination requirement pursuant to § 231."  17 DCMR § 4019.1(d).

33.     These regulations are subject to the Code of the District of Columbia, which state that "Every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including … employment." D.C. Code § 2-1402.01.

34.     It is therefore an "unlawful discriminatory practice to … threaten, retaliate against, or interfere with any person in the exercise or enjoyment of … any right [including employment]," or for any person to require, request, or suggest that another person do likewise. D.C. Code § 2-1402.61.

35.     It is expressly prohibited, on the basis of religion, "to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee." D.C. Code § 2-1401.11 (a)(1).

36.     It is therefore critical to all involved that if Plaintiffs are entitled to a religious exemption, such exemption should be provided efficiently, and should be effective to protect against any adverse act or failure to act from DC Health or any other organ of the District government.

37.     The licensing authority at issue remains "under the administrative control of the Mayor." D.C. Code § 3-1203.01.  Mayor Bowser has a legal duty to establish, or require DC Health to establish, procedures that accord with the Administrative Procedures provisions of the D.C. Code.  § 2-503.  If regulations pertaining to licensure are illegitimate, the Mayor as well as the agency director are both individually responsible.

38.    If the agency is to take adverse action against an individual, the agency has the burden of proof, and every decision or order by an agency against a party must be in writing, accompanied by specific findings of fact and conclusions of law referencing the supportive evidence.  § 2-509.

39.    The administrative agencies of the District of Columbia have an affirmative duty to provide information upon request.  "The public policy of the District of Columbia is that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. To that end, provisions of this subchapter shall be construed with the view toward expansion of public access and the minimization of costs and time delays to persons requesting information." § 2-531.

40.    The D.C. Code, which supersedes agency rulemaking authority, provides five categories of fitness for licensure of health professionals, and vaccination status does not fit any of them.  § 3-1205.03(a); see also § 3-1205.04(m)-(n).  As such, the Defendants lacked authority to condition licensure on vaccination status, and Defendants lack authority to continue their denial of licensure to the Plaintiffs.

41.    All that the D.C. Code requires of applicants for a nursing license is submission of an application to the board using the required form and payment of the applicable fees.  § 3-1205.05.  "Each board *shall* issue a license, registration, or certification to an applicant who meets the requirements of this chapter and rules and regulations issued pursuant to this chapter to practice the health occupation regulated by the board."  § 3-1205.08 (emphasis added).

42.    Renewal of a preexisting license can only be conditioned on proof of having undergone continuing education, and the licensing authority does not have discretion to deny licensure if these specified criteria have been met:

(d) Before the license, registration, or certification expires, the licensee, registrant, or person certified may renew it for an additional term, if the licensee:
    (1) Submits a timely application to the board;
    (2) Is otherwise entitled to be licensed, registered, or certified;
    (3) Pays the renewal fee established by the Mayor; and
    (4) Submits to the board satisfactory evidence of compliance with any continuing education requirements established by the board for license, registration, or certification renewal.
(e) Each board *shall* renew the license, registration, or certification of each licensee, registrant, or person certified who meets the requirements of this section.

§ 3-1205.10(d)-(e) (emphasis added)

43.    If a person is precluded from renewing their license, and thereby "fails to renew their license, registration or certification to practice a health occupation[, then they] shall be considered to be unlicensed, unregistered, or uncertified and subject to the penalties set forth in this chapter and other applicable laws of the District, if he or she continues to practice the health occupation." § 3-1205.09.

44.    Under the laws of the District, being denied license renewal on illegal and discriminatory grounds causes clear, legally-cognizable, economic harm.

45.    If the Mayor or DC Health, by act or omission, deny the license renewal or otherwise revoke licensure of an individual, the law imposes clear requirements on the Defendants:

Every decision and order adverse to a licensee, registrant, or person certified shall be in writing and shall be accompanied by findings of fact and conclusions of law. The findings shall be supported by, and in accordance with, reliable, probative, and substantial evidence. The Mayor shall provide a copy of the decision and order and accompanying findings of fact and conclusions of law.

§ 3-1205.15(d). This requirement was neglected in this case, and Defendants have failed to explain their denial of license renewal against the Plaintiffs.

## FACTS RELATED TO PLAINTIFFS' CLAIMS

46.     On or about 23 August 2021, DC Health sent correspondence to each of the
Plaintiffs, providing notice of the emergency regulation that would require them to receive a
Covid-19 vaccination and specifying the means by which they might seek religious exemption.
This emergency regulation was the predecessor to 22B DCMR § 230.  **Complaint Exhibit 1 at
12-18.**  Plaintiffs each submitted their requests for religious exemption before the deadline in
September 2021.

47.     Then, after DC Health promulgated the final rule at the close of 2021 (**Complaint
Exhibit 1 at 1-17**), DC Health gave notice of the renewed requirement of Covid-19 vaccination
as a condition to retain their licensure, again providing information on how a religious exemption
might be sought, and requiring an additional attestation in support of the exemption within three
(3) days of the letter.  **Complaint Exhibit 2 at 1-2**.

48.     With even this aggressive demand, Plaintiffs dutifully complied.

49.     In mid-February 2022, DC Health contacted Plaintiffs Dalen, Moody, and Shapiro
to give notice that their request for exemption had been denied, on the basis that grant of the
exemption would pose an undue hardship on DC Health.  **Complaint Exhibit 3**.

50.     This denial was made by a form letter.  Upon information and belief, Defendants
denied all requests for religious exemption from vaccination at that time, premised on the basis
of an unarticulated undue hardship that religious exemption posed to DC Health.

51.     "Undue hardship" is a legal standard taken from employment law and has no
basis in this context since none of the Plaintiffs are employees of DC Health.

52.     Moreover, the sole criterion for grant of a religious exemption within the
regulation relied upon is whether the individual "objects in good faith and in writing that the

person's vaccination against COVID-19 would violate a sincerely held religious belief and the vaccination would in fact violate a sincerely held religious belief of the person."  22B DCMR § 231.1(a).

53.     As such, there is no countervailing governmental interest whatsoever to be considered by the plain terms of that regulation.

54.     Defendants have never challenged (in the letter or otherwise) whether Plaintiffs' objection to vaccination was made in good faith, whether their religious beliefs were sincere, or whether those religious beliefs were violated by the vaccination mandate.

55.     That letter from DC Health also provided that appeal of the denial had to be sought by requesting an administrative hearing.  No such notice was ever provided to Plaintiffs Creamer or Pizzi, and they were left to wonder, without proper notice given, whether their exemption request had been granted or denied.

56.     Upon receipt of notice of their denial, Plaintiffs Dalen, Moody, and Shapiro all requested an appeal hearing to remedy their denial, which had been made on legally illegitimate grounds, but under color of law.

57.     Soon after their requests for appeal hearings had been made and a hearing was scheduled, DC Health then gave notice to each of them that their exemption request was subsequently approved after all, for a period of one year.

58.     However, the basis by which DC Health determined to approve the exemption was a "careful review of current hospitalization rates and positive cases in the district." **Complaint Exhibit 4 at 1**.

59.     That same approval letter explained that their free exercise of religion was conditional upon "the best interest of the public health," and that was the basis for why their initial request for an exemption to the vaccination requirement had been denied.

60.     Soon after that, the counsel who would have to represent DC Health at the upcoming administrative hearing contacted those Plaintiffs and urged them to dismiss their appeal and cancel their hearing, on the assurance that DC Health would approve their exemption and their licensure would be permitted.

61.     These Plaintiffs complied with the request; they dismissed their appeals and canceled their hearings.  **Complaint Exhibit 4 at 2-4**.

62.     By contrast, Plaintiffs Creamer and Pizzi, who never received notice of approval or denial of their exemption requests by the time they sought renewal, made repeated efforts to clarify their status under pressure from their employer to confirm their continued licensure and in view of the upcoming renewal date.

63.     Plaintiff Creamer resubmitted her exemption request on 1 March 2022, and again on 3 May 2022 when she attempted to renew her license using the online web interface. Although the original time frame promised by DC Health for a response was 4-6 weeks, she had never received any response from DC Health until June of 2022.

64.     Immediately after submitting payment for renewal on 3 May 2022, Plaintiff Creamer received an email message from "Health Regulation and Licensing Administration DC Health," which notified her that her application was under review and would remain on "pending" status until that review was concluded.  That review has not been completed as of this filing, and her license is set to lapse on 30 June 2022, after which she will likely begin incurring damages due to her inability to perform her job.

65.     On 18 May 2022, Plaintiff Creamer telephoned the Board of Nursing and was redirected to contact Daneka Bigelow who, it was stated, was a point of contact for registered nurses seeking renewal.  After calling and emailing Ms. Bigelow, no response was ever received.

66.     On 24 May 2022, Plaintiff Creamer sent a letter to the D.C. Office of Human Rights to request a hearing on her *de facto* denial of a license on the basis of her religious objection to the illegal vaccination requirement.

67.     Finally, on 3 June 2022, DC Health's Health Regulation and Licensing Administration sent Plaintiff Creamer an email purporting to approve her exemption request (**Complaint Exhibit 4 at 5**); however, her license renewal status remains pending review to this day, and has not been granted renewal.

68.     Plaintiff Creamer again contacted DC Health on 7 June 2022 and 14 June 2022, but has not received notice for why her renewal has not been granted, despite having received the notice of approval from DC Health.

69.     On 8 June 2022, the D.C. Office of Administrative Hearings sent an Order indicating that her request for a hearing would be dismissed unless she could provide "a copy of a written denial that shows DOH has made an appealable decision about your exemption request," adding that such "appealable decision must be issued by the D.C. Department of Health, and not from any other entity."  **Complaint Exhibit 5**.

70.     Plaintiff Pizzi also attempted to renew her license online on 22 May 2022, and received a similar response that her renewal was under review and would remain on "pending" status, in which status it still remains.  Her license is likewise set to lapse on 30 June 2022, after which she will likely begin incurring damages due to her inability to perform her job.

71.     On 23 May 2022, Plaintiff Pizzi attempted to send a written letter by email to DC Health, but the email address provided was undeliverable.  On 26 May she sent a letter by certified mail to request a hearing for the *de facto* denial of her license renewal.  On 3 June 2022 she received an email message that asked her once again to provide an attestation in support of her request for religious exemption, just as she had already done.  Her license is likewise set to lapse on 30 June 2022, after which she will likely begin incurring damages due to her inability to perform her job.

72.     On 15 May 2022, Plaintiff Dalen attempted to renew her license, and received the same notification that her renewal was on hold, pending review, even though DC Health had already sent her what purported to be a notice of approval of her license, upon which she had relied to dismiss her appeal and cancel her hearing.  Her license is likewise set to lapse on 30 June 2022, after which she will likely begin incurring damages due to her inability to perform her job.

73.     On 23 May 2022, Plaintiff Moody attempted to renew her license, and received the same notification that her renewal was on hold, pending review, even though DC Health had already sent her what purported to be a notice of approval of her license, upon which she had relied to dismiss her appeal and cancel her hearing.  Her license is likewise set to lapse on 30 June 2022, after which she will likely begin incurring damages due to her inability to perform her job.

74.     On 6 June 2022, Plaintiff Shapiro attempted to renew her license, and received the same notification that her renewal was on hold, pending review, even though DC Health had already sent her what purported to be a notice of approval of her license, upon which she had relied to dismiss her appeal and cancel her hearing.  Her license is likewise set to lapse on 30

June 2022, after which she will likely begin incurring damages due to her inability to perform her job.

75.     Plaintiffs' employer had notified Plaintiffs that if they are unable to renew their licenses by 30 June 2022 when their current term ends, they will have 90 days to resolve the problem with DC Health, provided that they have a hearing scheduled.  Otherwise, they would no longer be eligible for full-time employment but could be retained on a part-time, as-needed basis, if there was work available for them.  **Complaint Exhibit 6 at 1-2**.

76.     Based on the false assurances made by DC Health that their exemptions had been approved, those of the Plaintiffs that were afforded an appeal hearing have dismissed their appeal and canceled their hearing.  Now that the hearings are canceled, DC Health is refusing to allow license renewal for any of the Plaintiffs.

77.     Without a hearing scheduled, all Plaintiffs face the threat of immediate termination or demotion and a loss of their livelihood.

78.     In the most recent communication from Plaintiffs' employer, they were notified that if their license expires without being allowed to renew, they are to cease work for the employer for D.C. residents until proof of renewed licensure can be provided.  **Complaint Exhibit 6 at 3-4**.

<u>THE NEED FOR EMERGENCY RELIEF</u>

79.     Defendants' violation of Plaintiffs' constitutional right to free exercise of religion has caused and continues to cause irreparable harm.

80.     Due to the violation of Plaintiffs' constitutional rights, Plaintiffs will all cease to possess a nursing license to practice their profession for the benefit of District residents after 30 June 2022.

81.     Plaintiffs will be cut off from their employment due to Defendants' illegitimate demand that they transgress their sincerely-held beliefs, the tenets of Christianity, and their own conscience, to be injected with a substance to which they are morally opposed.  If corrective remedy is not soon applied, this violation of their constitutional right to free exercise of religion will cause further irreparable harm.

82.     Defendants have arbitrarily and capriciously denied Plaintiffs their licensure on the basis of their religious objection to vaccination, and they have done so without legitimate exercise of authority but under color of law, using their official position of authority to invidiously discriminate against Plaintiffs.

83.     This infringement upon Plaintiffs' constitutionally-protected right to free exercise of religion will cause irreparable harm, in addition to the pecuniary harm from the loss of employment.

84.     Filed concurrently with this Complaint, Plaintiffs are moving this court for entry of a temporary restraining order, asking this court to enjoin Defendants from denying Plaintiffs a religious exemption to vaccination and the renewal of their nursing licenses, grounded upon the immediate and irreparable harm Plaintiffs suffer as a result of Defendants' actions and conduct.

**COUNT I**
**Violation of the Religious Freedom Restoration Act RFRA**
**42 U.S.C. § 2000bb *et seq*.**

85.     The foregoing paragraphs are hereby incorporated as if set forth fully herein.

86.     Defendants are subject to the legal requirements of RFRA since the District is a "covered" entity.  42 U.S.C. § 2000bb-2(2).

87.     RFRA protects the free exercise of religion against any substantial burden imposed by a governmental actor, even when imposed by a rule of general applicability, and

protects any exercise of religion whether or not such exercise is compelled by, or central to, a system of religious belief.  42 U.S.C. §§ 2000bb-1 and 2000bb-2(4).

88.     RFRA imposes a burden of strict scrutiny on covered entities such as the District, requiring Defendants to demonstrate a compelling governmental interest and careful use of the least restrictive means to justify any substantial burden imposed on religious exercise of Plaintiffs by their acts or omissions.  42 U.S.C. § 2000bb-1(b).

89.     Defendants have not and cannot propound a compelling governmental interest that is cognizable under the law.  The only rationale offered (when one was actually offered) was the "undue hardship" that exemption would pose to DC Health, completely unsupported by evidence.  More recently, Defendants have failed to provide any rationale at all for the continued denial of license renewal against Plaintiffs.

90.     Under the applicable "to the person" standard of RFRA, the Defendants must establish with evidence an *actual* compelling governmental interest for imposing the burden on the religious practice of Plaintiffs *in particular* and further that the Defendants' conduct is *actually necessary* to serve that postulated governmental interest.  Defendants are unable to meet that standard.

91.     The denial letters sent by DC Health to some of the Plaintiffs did not provide any particularized analysis.  Likewise, the online application form for license renewal did not provide opportunity to provide information relevant to such an analysis.

92.     Even worse, the pattern of the earlier blanket denials and the current failure to permit license renewal demonstrate a broad governmental policy followed by the Defendants of denying religious accommodation without sufficient analysis or consideration of evidence.

93.     To wit—there is no legitimate basis for requiring vaccination of individuals who live and work hundreds of miles away from the District, and who interact with patients (including District residents) solely by *remote telecommunications*; Defendants can show no compelling governmental interest in such a strained policy.

94.     To meet the "least-restrictive means" standard imposed by RFRA, the Defendants must prove that there is absolutely no other adequate way to accomplish a compelling governmental interest except for the policy they have followed.  If any alternative accommodation is adequate, the governmental actor fails to meet that standard.

95.     In this case, Defendants' policies do not serve the governmental interest in a meaningful way, and there are plenty of alternative means for ensuring safely-conducted tele-health calls.

96.     Even if the regulatory scheme imposed by the plain wording of 22B DCMR §§ 230-231 does not offend RFRA in its face, clearly the interpretation made and policy imposed by the Defendants in the enforcement thereof has violated RFRA.  Whether this is categorized as an "as-applied" challenge to the way Plaintiffs specifically were treated, or as a facial challenge to the broadly applied interpretive policy followed by Defendants, it is clear that this regulatory regime does not survive strict scrutiny.

97.     Defendants' interpretation, policy, actions, and failures to act all contributed to violating Plaintiffs' rights which are protected by RFRA, and Plaintiffs suffer and will suffer continued irreparable harm from loss of their employment and career unless they violate their religious convictions by accepting the Covid-19 injections.

98.     Absent immediate injunctive relief, Plaintiffs face imminent and irreparable harm.

<u>COUNT I PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray this court:

a.  To declare that Defendants have unlawfully burdened Plaintiffs' right to free exercise of their religion, in violation of the Religious Freedom Restoration Act;

b.  To find that Defendants violated Plaintiffs' procedural rights designed to protect a threatened, concrete interest, and that such violation resulted in an injury to that interest;

c.  To issue a temporary restraining order, followed by a preliminary and permanent injunction, prohibiting Defendants, their agents, officials, employees, and any other persons acting in concert with them, from enforcing a vaccine mandate or continuing to deny license renewal against the Plaintiffs, and all those similarly situated, or from taking any action adverse to their licensure to practice nursing in service to District residents, or from other retaliatory actions.

d.  To enjoin Defendants from enforcing the vaccination mandate of 22 DCMR § 230 against Plaintiffs and all similarly situated;

e.  To require Defendants to grant renewal of Plaintiffs' licenses to practice nursing with regarding to residents of the District of Columbia;

f.  To award Plaintiffs compensatory damages, or in the alternative, nominal damages;

g.  To award Plaintiffs punitive damages;

h.  To award Plaintiffs their costs and reasonable attorney fees and expenses pursuant to 42 U.S.C. 1988(b); and

i.  To grant Plaintiffs all such other and further relief as the Court deems just and proper.

20

## COUNT II
## Violation of the First, Fifth, and Fourteenth Amendments to the Constitution
## 42 U.S.C. § 1983

99.     The foregoing paragraphs are hereby incorporated as if set forth fully herein.

100.    The prohibitions against governmental conduct listed in the First Amendment to the U.S. Constitution are applicable upon the District of Columbia and its officials by reason of the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment.

101.    42 U.S.C. § 1983 provides a remedy for the Plaintiffs to seek legal redress for violation of constitutional rights.

102.    The Free Exercise Clause prohibits government from enacting laws, regulations, or policies that burden the free exercise of religion, unless they are both neutral and generally applicable and narrowly tailored to serve a truly compelling governmental interest.

103.    When a law, regulation, or policy is not neutral and general in application and it burdens religious exercise, it is analyzed under the framework of strict scrutiny, requiring proof of a compelling governmental interest and use of the least restrictive means to accomplish it.

104.    The regulatory scheme at issue does not meet the criteria of general applicability because it "invite[s]" governmental assessment of individual choices, by providing "a mechanism for individualized exemptions." *Employment Division v. Smith*, 494 U.S. 872, 884 (1990).

105.    As discussed above, Defendants have not shown, and still cannot show, a compelling governmental interest for their denial of Plaintiff's license to serve their clients remotely while remaining hundreds of miles outside of the District.

106.    Further, the unjustified denial of license renewal fails to satisfy either the "least restrictive means" test or the "narrowly tailored" test.  It is specifically because this regulatory regime is not narrowly tailored that it even affects people like the Plaintiffs, who live and work hundreds of miles away from the District.  Plaintiffs pose absolutely no threat to the legally-cognizable interests of DC Health that enforced vaccination would avoid.

107.    Defendants have never challenged the sincerely-held religious beliefs postulated by Plaintiffs, or Plaintiff's good faith insistence on following those beliefs in opposition to receiving the Covid-19 injections.  Yet, the District continues to discriminate against Plaintiffs due to their sincerely held religious beliefs.

108.    Settled law prohibits Defendants from interposing themselves as arbiters of whether Plaintiffs' beliefs are reasonable in the eyes of Defendants or approved by a religious leader or a particular dogma.

109.    Furthermore, DC Health continues to follow a policy that subordinates individual religious exercise to the perceived interests of "public health" purely by reference to "hospitalization rates and positive cases."  Complaint Exhibit 4.

110.    The free exercise of religion is a fundamental right guaranteed by the Constitution with little room for exception, and DC Health lacks the legitimate authority to subordinate that fundamental right to bureaucratic statistical analysis.

111.    Written approval of an exemption request that is predicated on legally faulty grounds, and conditioned on incorrect criteria is insufficient to render moot a challenge to this regulatory regime.

112.    Even if the regulatory scheme imposed by the plain wording of 22B DCMR §§ 230-231 is not found to be unconstitutional on its face, clearly the interpretation made and policy

imposed by the Defendants in the enforcement thereof has violated the free exercise of Plaintiffs'

religion.  Whether this is categorized as an "as-applied" challenge to the way Plaintiffs

specifically were treated, or as a facial challenge to the broadly applied interpretive policy

followed by Defendants, it is clear that this regulatory regime must be struck as unconstitutional.

113.    Defendants' policies, acts, and omissions are a violation of Plaintiffs'

constitutionally-protected rights, and a violation of the rights of those who are similarly situated.

114.    Because it does not satisfy strict scrutiny, the regulatory regime of 22B DCMR §§

230-231 is facially invalid.

115.    In the alternative, if the court does not rule that the regulations as promulgated are

facially invalid, then the interpretation, policy, and enforcement of the regulation, as broadly

applied by Defendants to all similarly-situated parties, is invalid.

116.    In the alternative, if the court rules that neither the regulations as promulgated nor

the interpretive policy by which it was enforced are constitutionally invalid, then the specific

application of this regulatory regime against these Plaintiffs was invalid.

117.    Because of the Defendants' regulatory regime, Plaintiffs have suffered and will

continue to suffer irreparable harm.

118.    Plaintiffs are entitled to equitable relief in the form of a declaration that

Defendants violated Plaintiffs' First Amendment right to the free exercise of religion, and an

order restraining and enjoining Defendants from denying renewal of Plaintiffs' licensure.

119.    If injunctive relief is not immediately granted, Plaintiffs will suffer irreparable

harm.

<u>COUNT II PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray this court:

    a.  To Declare that Defendants have unlawfully burdened Plaintiffs' right to free

exercise of their religion, in violation of the First Amendment to the U.S. Constitution;

b. To Declare that Defendants have denied Plaintiffs the due process and equal protection of the laws, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution;

c. To find that Defendants violated Plaintiffs' procedural rights designed to protect a threatened, concrete interest, and that such violation resulted in an injury to that interest;

d. To issue a temporary restraining order, followed by a preliminary and permanent injunction, prohibiting Defendants, their agents, officials, employees, and any other persons acting in concert with them, from enforcing a vaccine mandate or continuing to deny license renewal against the Plaintiffs, and all those similarly situated, or from taking any action adverse to their licensure to practice nursing in service to District residents, or from other retaliatory actions.

e. To enjoin Defendants from enforcing the vaccination mandate of 22 DCMR § 230 against Plaintiffs and all similarly situated;

f. To require Defendants to grant renewal of Plaintiffs' licenses to practice nursing with regarding to residents of the District of Columbia;

g. To award Plaintiffs compensatory damages, or in the alternative, nominal damages;

h. To award Plaintiffs punitive damages;

i. To award Plaintiffs their costs and reasonable attorney fees and expenses pursuant to 42 U.S.C. 1988(b); and

j.   To grant Plaintiffs all such other and further relief as the Court deems just and

proper.

## COUNT III
## Violation of the D.C. Human Rights Act
## D.C. Code § 1-1401.11 and § 1-1402.61

120.   The foregoing paragraphs are hereby incorporated as if set forth fully herein.

121.   The Defendants are subject to the D.C. Human Rights Act.  *Davis v. District of Columbia*, 949 F. Supp. 2d 1, 11 (D.D.C. 2013); *Robertson v. District of Columbia*, 269 A.3d 1022, 1028 (D.C. 2022) ("the DCHRA is a law applicable (or generally applicable) to District of Columbia employees").

122.   It is expressly prohibited, on the basis of religion, "to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee."  § 2-1401.11 (a)(1).

123.   Furthermore, it is an "unlawful discriminatory practice to … threaten, retaliate against, or interfere with any person in the exercise or enjoyment of … any right granted or protected under this chapter," or for any person to require, request, or suggest that another person do likewise.  D.C. Code § 2-1402.61.

124.   Therefore, the Defendants' interference with Plaintiffs' employment relationship with their employer on the basis of their religious exercise is a violation of D.C. law.

125.   Defendants' refusal to renew Plaintiffs' licensure without legal justification, when paired with the terms of 17 DCMR § 4019.1(d) that prohibit Plaintiffs' employer from employing

or otherwise contracting with Plaintiffs, combine to interfere impermissibly with Plaintiffs'

employment.

126.     The Defendants' persistent harassment and interference with Plaintiffs'

employment, done without legitimate legal authority but under color of law, has been directed

toward depriving Plaintiffs of the "equal opportunity to participate fully in the economic, cultural

and intellectual life of the District and to have an equal opportunity to participate in all aspects of

life, including … employment."  Code of the District of Columbia § 2-1402.01.

127.     The discretion afforded to DC Health in regulation of professional licensure is

circumscribed by law, and can be judicially checked when it violates the civil rights of affected

parties: "[T]he District's human rights law was and is a limitation implied in the various 'permit,

license, franchise, benefit, [and] advantage' schemes administered by agencies of the District

government." *Jackson v. D.C. Bd. of Elections & Ethics*, 999 A.2d 89, 111 (D.C. 2010).

128.     Application of an "undue burden" rationale in the blanket denials applied an

improper criterion to the evaluation of religious exemption under 22B DCMR § 231.1(a) and

22B DCMR § 231.3.

<u>COUNT III PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray this court:

a.   To declare that Defendants interfered with Plaintiffs employment, acted to

deprive Plaintiffs of employment opportunities and otherwise adversely affect

their status as employees, and, illegally but under color of law, required Plaintiffs'

employer to deprive Plaintiffs of their employment, in violation of the D.C.

Human Rights Act;

b.   To declare that the Defendants' promulgation of 22 DCMR § 230 *et seq*.

exceeded legally-delegated authority and constituted an invalid abuse of authority

by Mayor Bowser, Director Nesbitt, and DC Health;

c.   To find that Defendants violated Plaintiffs' procedural rights designed to protect a threatened, concrete interest, and that such violation resulted in an injury to that interest;

d.   To issue a temporary restraining order, followed by a preliminary and permanent injunction, prohibiting Defendants, their agents, officials, employees, and any other persons acting in concert with them, from enforcing a vaccine mandate or continuing to deny license renewal against the Plaintiffs, and all those similarly situated, or from taking any action adverse to their licensure to practice nursing in service to District residents, or from other retaliatory actions.

e.   To enjoin Defendants from enforcing the vaccination mandate of 22 DCMR § 230 against Plaintiffs and all similarly situated;

f.   To require Defendants to grant renewal of Plaintiffs' licenses to practice nursing with regarding to residents of the District of Columbia;

g.   To award Plaintiffs compensatory damages, or in the alternative, nominal damages; and

h.   To grant Plaintiffs all such other and further compensatory relief as the Court deems just and proper.

## COUNT IV
### Violation of the D.C. Administrative Procedures Act
### D.C. Code § 2-501 *et seq.*

129.   The foregoing paragraphs are hereby incorporated as if set forth fully herein.

130.   Mayor Bowser, Director Nesbitt, and DC Health lack authority to exercise discretion where the D.C. Code has not delegated to them the authority to exercise discretion.

"Agencies owe their capacity to act to the delegation of authority, either express or implied, from the legislature." *Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 670 (D.C. Cir. 1994).

131.    Mayor Bowser, Director Nesbitt, and DC Health lacked rulemaking authority to require vaccination as a condition to licensure, since this requirement extends beyond the licensure requirements of D.C. Code § 3-1205.03 and § 3-1205.04.  Since they acted beyond the authority of their official capacity, any further denial of license renewal is an arbitrary and capricious violation made *ultra vires* but under color of law.

132.    Mayor Bowser, Director Nesbitt, and DC Health did not act in accordance with the law in that they have denied Plaintiffs' license renewal without carrying the burden of proving the reason for that denial or providing specific findings of fact or conclusions of law with reference to supportive evidence in the administrative record.

133.    Mayor Bowser, Director Nesbitt, and DC Health have failed to provide full and complete information about their denial of Plaintiffs' license renewal.

134.    Mayor Bowser, Director Nesbitt, and DC Health must follow D.C. Code § 3-1205.10(e), and must be required to renew Plaintiffs' licenses.

135.    The illegal policy pursued by Mayor Bowser, Director Nesbitt, and DC Health have established a pattern and practice of discrimination against individuals like the Plaintiffs.

136.    Even if the court does not declare that 22 DCMR § 230 is legally invalid, the policy followed in enforcement of that regulation must be declared illegal and not in accordance with the law.

<u>COUNT IV PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray this court:

    a.    To declare that Defendants' actions against Plaintiffs were arbitrary and

capricious, not in accordance with the law, and demonstrate a policy, pattern, and/or practice of invidious discrimination, in violation of the D.C. Administrative Procedures Act;

b.   To declare that the Defendants' promulgation of 22 DCMR § 230 *et seq.* exceeded legally-delegated authority and constituted an invalid abuse of authority by Mayor Bowser, Director Nesbitt, and DC Health;

c.   To enjoin Defendants from enforcing the vaccination mandate of 22 DCMR § 230 against Plaintiffs and all similarly situated;

d.   To require Defendants to grant renewal of Plaintiffs' licenses to practice nursing with regarding to residents of the District of Columbia;

e.   To award Plaintiffs compensatory damages, or in the alternative, nominal damages;

f.   To grant Plaintiffs all such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a trial by jury on all claims made herein for which a jury is permissible.

Respectfully submitted on this 29th day of June 2022 by

COUNSEL FOR PLAINTIFF

/s/ Timothy P. Bosson

Timothy P. Bosson, Esq. (DCB: 1029002)
Isaiah R. Kalinowski, Esq. (DCB 1021011)[†]
Robert Rose, Esq. (DCB: 1029004)
Bosson Legal Group, PC
8300 Arlington Blvd., Ste. B2
Fairfax, Virginia 22031
tbosson@bossonlaw.com
ikalinowski@bossonlaw.com
rrose@bossonlaw.com
Phone (571) 775-2529
Fax (571) 775-2521
*Counsel for Plaintiffs*

---

[†] Seeking admission to D.D.C.

## **VERIFICATION**

I, KAREN CREAMER, am over the age of 18 and I am a plaintiff in this action.

I hereby verify that the allegations that pertain to me in this Verified Complaint are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently.

I declare under penalty of perjury, under the laws of the United States, that the foregoing statements in this Verification are true and correct.

Signed: 29 June 2022             _____
                                KAREN CREAMER

## **VERIFICATION**

I, JANE DALEN, am over the age of 18 and I am a plaintiff in this action.

I hereby verify that the allegations that pertain to me in this Verified Complaint are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently.

I declare under penalty of perjury, under the laws of the United States, that the foregoing statements in this Verification are true and correct.

Signed: 29 June 2022

_____
JANE DALEN

## **VERIFICATION**

I, MARY MOODY, am over the age of 18 and I am a plaintiff in this action.

I hereby verify that the allegations that pertain to me in this Verified Complaint are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently.

I declare under penalty of perjury, under the laws of the United States, that the foregoing statements in this Verification are true and correct.

Signed: 29 June 2022

_____
MARY MOODY

## **VERIFICATION**

I, MARY PIZZI, am over the age of 18 and I am a plaintiff in this action.

I hereby verify that the allegations that pertain to me in this Verified Complaint are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently.

I declare under penalty of perjury, under the laws of the United States, that the foregoing statements in this Verification are true and correct.

Signed: 29 June 2022

_____

MARY PIZZI

## **VERIFICATION**

I, ESTHER SHAPIRO, am over the age of 18 and I am a plaintiff in this action.

I hereby verify that the allegations that pertain to me in this Verified Complaint are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently.

I declare under penalty of perjury, under the laws of the United States, that the foregoing statements in this Verification are true and correct.

Signed: 29 June 2022

_Esther Shapiro_
ESTHER SHAPIRO